UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,

  -against -

NORTHROP GRUMMAN SYSTEMS
CORPORATION and NORTHROP
GRUMMAN CORPORATION,

                Defendants.
------------------------------------X

**COMPLAINT**

Civil Action No.: 22-CV-2101

Plaintiff, United States of America (the "United States"), by its attorney, BREON PEACE, United States Attorney for the Eastern District of New York, Kathleen A. Mahoney and Matthew Silverman, Assistant United States Attorneys, of counsel, by the authority of the Attorney General and acting at the request of the United States Department of the Navy (the "Navy"), files this complaint and alleges as follows:

## NATURE OF ACTION

1. This is a civil action against Defendants Northrop Grumman Systems Corporation and Northrop Grumman Corporation (collectively "Defendants" or "NG") pursuant to Sections 107(a), 113(f), and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(f) and 9613(g)(2), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the New York Oil Spill Prevention, Control, and Compensation Act ("NY Oil Spill Act"), N.Y. Nav. L. §§ 176(8) and 181(5).

2. The Navy has taken response actions to address multiple releases and threatened releases of hazardous substances and petroleum at the former Naval Weapons Industrial Reserve Plant in Bethpage, New York ("NWIRP-Bethpage") and at areas where such hazardous substances and petroleum have come to be located (collectively "NWIRP-Bethpage Site").

3. The Navy and Defendants owned portions of NWIRP-Bethpage at various times, and Defendants carried out manufacturing and other operations there.

4. The Navy's response actions have also addressed hazardous substances that have migrated or are migrating from the approximately 500 acres of real property adjacent to and surrounding the NWIRP-Bethpage that Defendants and/or their predecessors in interest own or have owned at any time since in or about 1937 ("Grumman Bethpage Site").

5. The United States has funded and/or installed, and expects to continue to fund and/or install, wellhead treatment systems for water supply plants in several water districts to address the groundwater contamination plumes that may be migrating, at least in part, from the former NWIRP-Bethpage Site.

6. Plaintiff United States seeks to recover response costs, including but not limited to investigative and other removal costs incurred and to be incurred for responding to the releases and threatened releases of hazardous substances and petroleum at and from the NWIRP-Bethpage Site and/or the Grumman Bethpage Site, and contribution for monies paid by the United States pursuant to consent judgments.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1367, and 42 U.S.C. § 9613(b).

8. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 112(c) and 1391(b) and 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances and petroleum at or from the Sites occurred in this district and because the acts or omissions giving rise to the claims occurred in this district.

## DEFENDANTS

9. Defendant Northrop Grumman Corporation ("NGC") is incorporated under the laws of Delaware and has its principal place of business in Virginia. Defendant Northrop Grumman Systems Corporation ("NGSC") is a wholly owned subsidiary of Defendant NGC. Defendant NGC has also been known as, and has conducted business as, NGSC in the State of New York.

10. Grumman Aircraft Engineering Corporation ("GAEC") was incorporated under the laws of the State of New York in 1929, and had its principal place of business in Bethpage, New York beginning in or about 1933. GAEC changed its name to Grumman Corporation ("GC") in or about July 1969.

11. Grumman Aerospace Corporation ("GAC") was incorporated under the laws of the State of New York in or about April 1969, and had its principal place of business in Bethpage, New York.

12. GAEC, GAC and/or GC (collectively "Grumman") conducted operations during the relevant times at NWIRP-Bethpage and Grumman Bethpage Sites.

13. In 1994, Grumman was acquired by Northrop Corporation, which was incorporated under the laws of Delaware. The merged entity was known as Northrop Grumman Corporation.

14. Defendant NGC and/or Defendant NGSC are the successors in interest to Grumman.

## STATUTORY BACKGROUND

**A. CERCLA**

15. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. § 9604(a); *see* 42 U.S.C. § 9601(25).

16. Under Section 104(a)(1) of CERCLA,

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may represent an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare of the environment. . . .

42 U.S.C. § 9604(a)(1).

17. Under Section 104(b) of CERCLA,

> Whenever the President is authorized to act pursuant to [Section 104(a)] or whenever the President has reason to believe that a release has occurred or is about to occur, . . ., he may undertake such investigations, monitoring, surveys, testing and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof, the source and nature of the hazardous substances, pollutants, or contaminants involved, and the extent of the danger to the public health or welfare or to the environment. . . .

42 U.S.C. § 9604(b).

18. For response actions pursuant to, *inter alia*, CERCLA Sections 104(a) and 104(b), the Secretary of Defense is the President's delegate, as provided in Executive Orders, and this authority, within certain limits, has been re-delegated to the Secretary of the Navy.

19. Under the Defense Environmental Restoration Program ("DERP"), 10 U.S.C. §§ 2701-2710, and pursuant to Executive Order 12580 (dated January 23, 1987), as amended by Executive Order 13016 (dated August 28, 1996), the Navy is authorized to perform response actions under CERCLA on land under the Navy's jurisdiction, custody or control, as well as on other lands on which releases from such land have come to be located.

20. Section 107(a) of CERCLA provides, in relevant part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –

   (1) the owner and operator of a vessel or facility,

   (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

   (3) any person who by contract, arrangement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances . . .

shall be liable for –

   (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . .

42 U.S.C. § 9607(a).

21. Section 113(f) of CERCLA provides, in relevant part, that "[a]ny person may seek contribution from any other person who is liable or who is potentially liable under [CERCLA Section 9607(a)], during or following any civil action under [Section 9606] or under [Section 9607(a)]." 42 U.S.C. § 9613(f)(1).

5

22. Section 113(g)(2) of CERCLA provides, in relevant part, that "[i]n any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2).

**B. The Declaratory Judgment Act**

23. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes any court of the United States, upon the filing of an appropriate pleading, to declare the rights and other legal relations of any interested party seeking such relief, whether or not further relief could be sought.

**C. New York Oil Spill Act**

24. The NY Oil Spill Act defines "petroleum" to mean "oil or petroleum of any kind and in any form including, but not limited to, oil, petroleum, fuel oil, oil sludge, oil refuse, oil mixed with other wastes and crude oils, gasoline and kerosene." N.Y. Nav. L. § 172(15).

25. Under Section 181(1) of the NY Oil Spill Act, "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and direct and indirect damages, no matter by whom sustained, as defined in this section." N.Y. Nav. L. §181(1).

26. Section 181(5) of the NY Oil Spill Act states that

> Any claim by any injured person for the costs of cleanup and removal and direct and indirect damages based on the strict liability imposed by this section may be brought directly against the person who has discharged the petroleum, provided, however, that damages recoverable by any injured person in such a direct claim based on the strict liability imposed by this section shall be limited to the damages authorized by this section.

N.Y. Nav. L. § 181(5).

27. Section 176(8) of the NY Oil Spill Act provides that "every person providing cleanup, removal of discharge of petroleum or relocation of persons pursuant to this section shall be entitled to contribution from any other responsible party." N.Y. Nav. L. § 176(8).

## GENERAL ALLEGATIONS

### A. Grumman at Bethpage

28. Grumman was incorporated in 1929 for the purpose of, among other things, the manufacture, design, and repair of air, amphibious and land craft and vessels. From 1929 to 1937, Grumman's headquarters were located in various places on Long Island, New York.

29. In or about 1937, Grumman moved its headquarters to property that it owned in Bethpage, New York. Over the next few years, Grumman purchased additional land and by 1941, had expanded its headquarters campus to approximately 600 acres.

### B. The NWIRP

30. On or about April 15, 1947, the Navy purchased from Grumman approximately 109.3 acres containing Plants 3, 10 and 20 and warehouses (later known as Plant 17), which had been constructed by Grumman. The Navy leased the buildings to Grumman.

31. In or about 1952, the approximately 109.3 acres owned by the Navy were designated as the Naval Industrial Reserve Aircraft Plant ("NIRAP") at Bethpage. On February 9, 1960, the NIRAP was redesignated the NWIRP-Bethpage.

32. In addition to the 109.3 acres, from March 1945 to December 10, 2002, the Navy also owned Plant 5, which was located on 28 acres owned by Grumman on the Grumman Bethpage Site. On December 10, 2002, the Navy transferred Plant 5 to the County of Nassau.

33. Section 2852 of the National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 105-85, 111 Stat. 1630 (Nov. 18, 1997), authorized conveyance of the NWIRP-

Bethpage property to the County of Nassau, New York, for purposes of redevelopment. On April 3, 2008, the Navy transferred approximately 100 acres of the NWIRP-Bethpage property (including Plants 3, 10, 17 and 20) to the County.

34. The Navy retains title to the remaining approximately nine acres at the NWIRP to facilitate ongoing implementation of response actions to releases and threats of releases of hazardous substances at and from NWIRP-Bethpage.

**C. Grumman's Operations at Bethpage**

35. From 1937 to 1996, Grumman conducted manufacturing and other operations on the NWIRP-Bethpage and the Grumman Bethpage Site.

36. Grumman's aircraft manufacturing processes included chemical milling, alodine processing lines, vapor degreasing, heat treatment, metal plating, painting and paint stripping. These processes generated rinse waters and waste containing chromium, cadmium wastes, cyanide, zinc and lead, as well as oil residues and waste with halogenated solvents and non-halogenated solvents. For many years, Grumman disposed of its liquid industrial wastes by discharging them directly into the ground at the NWIRP-Bethpage and Grumman Bethpage Sites.

37. Beginning in or about 1939, Grumman used trichloroethylene ("TCE") and other chlorinated and non-chlorinated solvents at the NWIRP-Bethpage and Grumman Bethpage Sites. Grumman stored and recycled TCE on the Grumman Bethpage Site until at least the 1980s. In the 1970s, TCE was discharging directly into the ground from a leaking bulk storage tank.

38. In or about 1941, Grumman installed underground storage tanks ("USTs") for fuel oil on the portion of property that later became part of the NWIRP-Bethpage. The USTs

discharged fuel oil into the soil that commingled with hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

39. For many years, Grumman stored chlorinated and non-chlorinated solvents, liquid cadmium, chromium and cyanide wastes and waste oils from its operations in 55-gallon drums at the NWIRP-Bethpage and Grumman Bethpage Sites. These drums released hazardous substances into the ground.

40. Grumman also stored fixtures, tools, and metallic wastes (aluminum and titanium scraps) contaminated with cutting oil, paint waste, halogenated and non-halogenated waste at the NWIRP-Bethpage and Grumman Bethpage Sites. Hazardous substances from these materials were discharged into the ground.

41. Grumman disposed of TCE, oil, paint thinner, Varsol, and waste oils that may have contained TCE, other solvents and/or polychlorinated biphenyls ("PCBs") by dumping them into unlined pits on the Grumman Bethpage Site.

42. From about 1954 through the 1960s, Grumman sprayed waste oil containing hazardous substances (including TCE) onto the roads at the NWIRP-Bethpage and Grumman Bethpage Sites.

43. From 1937 until it ceased its manufacturing operations in the 1990s, Grumman treated, transported, disposed of, and/or arranged for the treatment, transport or disposal of hazardous substances at the NWIRP-Bethpage and the Grumman Bethpage Site.

**D. Site Contamination**

44. Hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), have been detected in the soils and groundwater at the NWIRP-Bethpage Site and the Grumman Bethpage Site. These hazardous substances include, but are not limited to, TCE,

trichloroethane ("TCA"), perchloroethylene ("PCE"), PCBs, hexavalent chromium, and 1,4-dioxane.

45. Pursuant to Section 104 of CERCLA, 42 U.S.C. § 9604, and its authorities under the DERP, 10 U.S.C. §§ 2701-2710, the Navy has incurred and continues to incur response costs to investigate and address releases and threats of releases of hazardous substances at or migrating from the NWIRP-Bethpage Site. The Navy's response actions have also addressed contamination by hazardous substances at or migrating from the Grumman Bethpage Site.

46. The Navy's response actions have included, but are not limited to, assessment, investigation, installation of outpost monitoring wells and vertical profile borings, sampling, testing, placement of soil cover, excavation and disposal of contaminated soils, mass contaminant removal through groundwater extraction and treatment, installation of sub-slab depressurization systems, and remedial analysis and design.

47. The Navy's response actions also have included funding and/or installation of wellhead treatment systems at public water supply plants owned and operated by the Bethpage Water District ("BWD"), South Farmingdale Water District ("SFWD"), and New York American Water Service ("NYAW").

48. Petroleum as defined by Section 172(15) of the NY Oil Spill Act, 12 N.Y. Nav. L. § 172(15), has been detected in, and has contaminated the soils and groundwater at the NWIRP-Bethpage Site. The petroleum hydrocarbon contamination at the NWIRP-Bethpage Site is commingled with hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

49. The petroleum contamination detected at the NWIRP-Bethpage Site is the result of the discharge from the USTs that were located there.

50. The United States has incurred and continues to incur costs to clean up and/or remove discharges of petroleum within the meaning of Section 181(5) of the NY Oil Spill Act, 12 N.Y. Nav. L. § 181(5), at or migrating from the NWIRP-Bethpage.

51. The United States continues to incur response costs within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and expects to continue incurring response costs.

52. Defendants have not reimbursed the United States for any of its response costs incurred in relation to the NWIRP-Bethpage or the Grumman Bethpage Sites.

### FIRST CLAIM FOR RELIEF

**(Cost Recovery Under Section 107 of CERCLA)**

53. Plaintiff United States reiterates paragraphs 1 through 52 of this Complaint and repeats all allegations as though set forth fully herein.

54. The NWIRP-Bethpage Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

55. The Grumman Bethpage Facility is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

56. There has been a "disposal" of hazardous substances at the NWIRP-Bethpage and Grumman Bethpage Sites within the meaning of Section 101(29) of CERCLA, 42 U.S.C. § 9601(29).

57. There have been and continue to be releases or threats of releases of hazardous substances within the meaning of Sections 101(14) and 101(22) of CERCLA, 42 U.S.C. §§ 9601(14) and 9601(22), into the environment at the NWIRP-Bethpage and Grumman Bethpage Sites.

58. The releases or threats of releases of hazardous substances at the NWIRP-Bethpage and Grumman Bethpage Sites have caused the United States to incur response costs as the term "response" is defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with the NWIRP-Bethpage and Grumman Bethpage Sites, including but not limited to costs of investigating and engaging in removal actions in connection with the NWIRP-Bethpage and Grumman Bethpage Sites. The United States will continue to incur response costs in connection with the NWIRP-Bethpage and Grumman Bethpage Sites in the future.

59. Defendants NGSC and NGC are "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

60. Defendants, through their predecessors in interest, were "owners" of the NWIRP-Bethpage Site within the meaning of Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), prior to the Navy's purchase of the property in 1947.

61. Defendants, through their predecessors in interest, were "operators" of the NWIRP-Bethpage Site within the meaning of Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), at all relevant times.

62. Defendants, through their predecessors in interest, were "owners" of the Grumman Bethpage Site within the meaning of Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), at all relevant times.

63. Defendants, through their predecessors in interest, were "operators" of the Grumman Bethpage Site within the meaning of Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), at all relevant times.

64. Defendants are liable to the United States pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as an owner or operator of the NWIRP-Bethpage Site at the time of disposal of hazardous substances at the NWIRP-Bethpage Site.

65. Defendants are liable to the United States pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as an owner or operator of the Grumman Bethpage Site at the time of disposal of hazardous substances at the Grumman Bethpage Site.

66. Defendants are liable to the United States pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as arrangers at the NWIRP-Bethpage Site.

67. Defendants are liable to the United States pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as arrangers at the Grumman Bethpage Site.

68. The costs of the response actions taken and to be taken by the United States at the NWIRP-Bethpage and Grumman Bethpage Sites are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

69. Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Defendants are liable to the United States for the response costs incurred or to be incurred by the United States in connection with the NWIRP-Bethpage and Grumman Bethpage Sites, including, but not limited to, investigating and engaging in removal actions, plus accrued interest on all such costs.

## **SECOND CLAIM FOR RELIEF**

**(Declaratory Relief With Respect to Response Costs)**

70. Plaintiff United States reiterates paragraphs 1 through 69 of this Complaint and repeats all allegations as though set forth fully herein.

71. The United States will incur future environmental response costs to address the release and threat of release of hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), in connection with the NWIRP-Bethpage and Grumman Bethpage Sites including but not limited to further investigation, studies, design, testing, evaluations, and monitoring.

72. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201-2202, the United States is entitled to a declaratory judgment on liability against Defendants for response costs to be incurred in the future in connection with the NWIRP-Bethpage and Grumman Bethpage Sites, including, but not limited to, investigating and engaging in removal actions, plus accrued interest on all such costs.

## THIRD CLAIM FOR RELIEF

### (Contribution Under Section 113 of CERCLA)

73. Plaintiff United States reiterates paragraphs 1 through 72 of this Complaint and repeats all allegations as though set forth fully herein.

74. Plaintiff United States is a person within the meaning of Sections 101(21) and 113(f) of CERCLA, 42 U.S.C. §§ 9601(21), 9613(f).

75. Plaintiff United States was an owner of the NWIRP-Bethpage at the time of disposal of hazardous substances at NWIRP-Bethpage and, thus, is within a class of "liable covered persons" listed in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

76. Consent Judgments have been entered against the United States under 42 U.S.C. § 9607(a) in the following civil actions in the United States District Court for the Eastern District of New York:

(a) *South Farmingdale Water District v. United States of America*, 10-CV-3060 (ADS)(WDW) (entered July 9, 2010) (requiring the United States to pay $14,550,000 to be utilized by SFWD for any and all past, present and future necessary costs of response consistent with the NCP incurred or to be incurred by the SFWD for the design, construction, and 30 years of operation and maintenance ("O&M") of a wellhead treatment system for SFWD Plant No. 1 in response to the release or threatened release of pollutants, contaminants, or hazardous substances to environment at, or migrating from the NWIRP-Bethpage and Grumman Bethpage Sites);

(b) *Bethpage Water District v. United States of America, Department of the Navy*, 13-CV-3480 (JS)(AKT) (entered on July 10, 2013) (requiring the United States to pay any and all past, present and future necessary costs of response consistent with the NCP incurred or to be incurred by the BWD for upgrades to the existing system for the groundwater treatment at BWD Plant No. 6 to address the groundwater plumes contaminated with VOCs that BWD alleges may be migrating at least in part from the NWIRP-Bethpage and Grumman Bethpage Sites); and

(c) *South Farmingdale Water District v. United States of America*, EDNY 15-CV-0085 (SJF)(AKT) (entered on January 9, 2015) (requiring the United States to pay any and all past, present and future necessary costs of response consistent with the NCP incurred or to be incurred by the SFWD for the design and construction of a system for the treatment of groundwater at SFWD Plant No. 3 and associated O&M costs for up to 30 years, to address the plume of groundwater contaminated with VOCs that SFWD alleges may be migrating, in part, from the NWIRP-Bethpage and Grumman Bethpage Sites).

77. The United States is authorized to seek contribution for these costs incurred under the Consent Judgments pursuant to 42 U.S.C. § 9613(f).

78. The Court should allocate the response costs incurred by the United States for the SFWD and BWD actions between Defendants and Plaintiff, using such equitable factors as the Court determines are appropriate, under 42 U.S.C. § 9613(f)(1).

## FOURTH CLAIM FOR RELIEF

### (Declaratory Relief With Respect to Contribution)

79. Plaintiff United States reiterates paragraphs 1 through 78 of this Complaint and repeats all allegations as though set forth fully herein.

80. The plumes of hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), in the groundwater at the NWIRP-Bethpage and Grumman Bethpage Sites, including but not limited to TCE, continue to migrate toward other water supply wells, and investigations have indicated that water supply wells already under treatment may require additional response actions, including but not limited to further investigation, studies, design, testing, evaluations, and monitoring.

81. The United States expects to incur future costs in actions brought against the United States and/or Department of the Navy to address the groundwater contamination plumes that may be migrating, at least in part, from the former NWIRP-Bethpage Site, including funding and/or installation of wellhead treatment systems for water supply plants.

82. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201-2202, the United States is entitled to a declaratory judgment on liability against Defendants for contribution for costs incurred by the United States in connection with the NWIRP-Bethpage and Grumman Bethpage Sites in future civil actions relating to the

groundwater contamination plumes that may be migrating, at least in part, from the former NWIRP-Bethpage Site.

## FIFTH CLAIM FOR RELIEF

### (Contribution Under NY Oil Spill Act)

83. Plaintiff United States reiterates paragraphs 1 through 83 of this Complaint and repeats all allegations as though set forth fully herein.

84. Defendants, through their predecessors in interest, are "responsible parties" within the meaning of Section 176(8) of the NY Oil Spill Act, 12 N.Y. Nav. § 176(8).

85. The United States is a "person providing cleanup [or] removal of discharge of petroleum" within the meaning of Section 176(8) of the NY Oil Spill Act, 12 N.Y. Nav. § 176(8).

86. Pursuant to Section 176(8) of the NY Oil Spill Act, 12 N.Y. Nav. § 176(8), Defendants are liable to the United States in contribution for costs incurred, and to be incurred, by the United States in connection with the cleanup and/or removal of petroleum at the NWIRP-Bethpage Site.

87. Pursuant to Section 181(5) of the NY Oil Spill Act, 12 N.Y. Nav. § 176(8), Defendants are liable to the United States for costs incurred, and to be incurred, by the United States in connection with the cleanup and/or removal of petroleum at the NWIRP-Bethpage Site.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that this Court:

A. On the First Claim for Relief, enter judgment pursuant Section 107(a) of CERCLA, 42 U.S.C. §9607(a), against Defendants in favor of the United States for response costs

incurred, and to be incurred, by the United States for actions conducted at or in connection with the NWIRP-Bethpage and Grumman Bethpage Sites, including interest, related oversight costs, and related indirect, administrative, investigative, and enforcement costs;

B. On the Second Claim for Relief, enter declaratory judgment finding that Defendants are liable for the future response costs incurred by the United States in connection with the NWIRP-Bethpage and Grumman Bethpage Sites, including, but not limited to, investigating and engaging in removal actions, plus accrued interest on all such costs;

C. On the Third Claim for Relief, enter judgment pursuant to CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), against Defendants in favor of the United States for contribution for the response costs incurred by the United States for the SFWD and BWD actions, upon such equitable factors as the Court determines are appropriate under 42 U.S.C. § 9613(f)(1);

D. On the Fourth Claim for Relief, enter declaratory judgment finding that Defendants are liable for contribution for costs incurred by the United States in any future actions brought against the United States;

E. On the Fifth Claim for Relief, enter judgment pursuant to the NY Oil Spill Act against Defendants in favor of the United States in contribution for the costs incurred, and to be incurred, by the United States in connection with the cleanup and/or removal of the petroleum at the NWIRP-Bethpage Site, to the extent that such costs have not been awarded on the First, Second or Third Claims for Relief; and

F. Grant the United States such other and further relief as this Court may deem appropriate.

|  |  |
|---|---|
|  | TODD KIM<br>Assistant Attorney General<br>Environment and Natural Resources Division<br>United States Department of Justice |
| Dated: Brooklyn, New York<br>April 12, 2022 | BREON PEACE<br>United States Attorney<br>Eastern District of New York<br>271-A Cadman Plaza East, 7th Floor<br>Brooklyn, New York  11201 |
| BY: | s/*Kathleen A. Mahoney*<br>KATHLEEN A. MAHONEY<br>MATTHEW SILVERMAN<br>Assistant U.S. Attorneys<br>(718) 254-7000/6026/6409<br>kathleen.mahoney@usdoj.gov<br>matthew.silverman@usdoj.gov |

Of Counsel:
Richard L. Green
Assistant Director
Affirmative Environmental Claims
Office of the General Counsel
Naval Litigation Office
United States Department of the Navy